1 | JOSEPH P. RUSSONIELLO, CSBN 44332
United States Attorney
2 | JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
3 | Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
4 | Assistant United States Attorney

5 | 450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
6 | Telephone: (415) 436-7124
FAX: (415) 436-7169
7
Attorneys for Defendants
8
UNITED STATES DISTRICT COURT
9
NORTHERN DISTRICT OF CALIFORNIA
10
OAKLAND DIVISION
11
ARMEN KIRAKOSIAN and      )   No. C 07-5440 CW
12 | RITA NICHIPORUK,          )
                          )
13 |       Plaintiffs,       )   DEFENDANTS' OPPOSITION TO
                          )   PLAINTIFFS' MOTION FOR SUMMARY
14 |       v.                )   JUDGMENT AND CROSS-MOTION FOR
                          )   SUMMARY JUDGMENT; AND
15 | MICHAEL CHERTOFF, Secretary; )   DECLARATION OF MARK A. ROHRS
EMILIO T. GONZALEZ, Director, CIS; )
16 | DONALD NEUFELD, CSC Director, )
Department of Homeland Security; )   Date:       March 6, 2008
17 | ROBERT S. MUELLER, Director, )   Time:       2:00 p.m.
Federal Bureau of Investigation, )   Courtroom:  2, 4th Floor
18 |                           )
      Defendants.          )
19 | _____ )

20 | **I. NOTICE OF MOTION**

21 |     PLEASE TAKE NOTICE THAT on March 6, 2008, at 2:00 p.m., before the Honorable Claudia

22 | Wilken, Courtroom No. 2, 1301 Clay Street, Oakland, California 94612, Defendants Michael

23 | Chertoff, et al., by their attorneys, Joseph P. Russoniello, United States Attorney for the Northern

24 | District of California, and Ila C. Deiss, Assistant U.S. Attorney, will move this Court for an order

25 | granting summary judgment in Defendants' favor.  Defendants' Motion is based on this notice, the

26 | points and authorities in support of this motion, the declaration of Mark A. Rohrs (attached as

27 | Exhibit A), the pleadings on file in this matter, and on such oral argument as the Court may

28 | permit.

Opposition to Plaintiffs' Motion for Summary Judgment
C07-5440 CW                              1

///

## II.  INTRODUCTION

Plaintiffs Armen Kirakosian and Rita Nichiporuk ("Plaintiffs") ask this Court to issue a writ of mandamus, compelling Defendants reach a decision on Plaintiffs' applications for adjustment of status. They also ask the Court to find that Defendants have violated the Administrative Procedure Act ("APA"), and to grant relief under the Declaratory Judgment Act. Plaintiffs' claims must fail. Plaintiff Kirakosian's application remains pending because his name check is not yet completed. Plaintiff Nichiporuk's name check was completed on April 26, 2005, however, as a derivative spouse, her application cannot be adjudicated until the principal application has been completed. Accordingly, Defendants respectfully ask this Court to grant their motion for summary judgment.

## III.  BACKGROUND

On April 11, 2005, Plaintiffs each filed an I-485 application for adjustment of status, based on a Form I-140 immigrant visa petition for alien worker on February 11, 2004 filed by Plaintiff Kirakosian. See Declaration of Mark A. Rohrs, ¶ 3-4 (attached as Exh. A). On April 19, 2005, U.S. Citizenship and Immigration Services ("USCIS") submitted a name check request to the Federal Bureau of Investigation ("FBI"). Rohrs Decl ¶ 15. Plaintiff Kirakosian's name check remains pending while Plaintiff Nichiporuk's name check was completed on April 26, 2005. Id. Plaintiffs' applications are ready to be adjudicated except for Plaintiff Kirakosian's pending background and security check. Rohrs Decl ¶ 6.

Plaintiff filed the instant Complaint on October 24, 2007. On January 4, 2008, Defendants answered the Complaint, and on January 24, 2008, Plaintiffs moved the Court for summary judgment.

## IV.  GENERAL PRINCIPLES APPLICABLE TO THIS MOTION

A.  LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine only if there is sufficient evidence for a reasonable fact finder to find

for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is material if the fact may affect the outcome of the case. See id. at 248. The Ninth Circuit has declared that "[i]n considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323-24 (1986).

B. ADJUSTMENT OF STATUS

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes the Secretary of the Department of Homeland Security ("Secretary")[1] to adjust to permanent residence status certain aliens who have been admitted into the United States. Adjustment of status is committed to the Secretary's discretion as a matter of law. Section 1255(a) expressly provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the [Secretary], in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]

8 U.S.C. 1255(a) (emphasis added). An applicant for adjustment of status must meet three requirements: she must apply for such status, be eligible to receive an immigrant visa, and the visa must be immediately available to her at the time she applies. Id. Significantly, the statute does not set forth any time frame in which a determination must be made on an application to adjust status. In addition, the regulations setting forth the procedures for aliens to apply to adjust status do not set forth a time frame for adjudication, and allow discretion in how to conduct the adjudication. See 8 C.F.R. § 245 et seq.

Before a decision is rendered on an alien's application to adjust status, U.S. Citizenship and Immigration Services ("USCIS") conducts several forms of security and background checks to

---

[1] On March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services assumed responsibility for the adjustment program. 6 U.S.C. § 271(b). Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary of Homeland Security. 6 U.S.C. § 551(d).

Opposition to Plaintiffs' Motion for Summary Judgment
C07-5440 CW                                3

ensure that the alien is eligible for the benefit sought and that she is not a risk to national security or public safety. See Rohrs Decl. ¶ 8. USCIS also conducts investigations into the bona fides of petitions and applications that have been filed, in order to maintain the integrity of the application process and to ensure that there is no fraud in the application process. See 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation [("FBI")] and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this chapter in the interest of the internal and border security of the United States"). These checks currently include extensive checks of various law enforcement databases, including the FBI. Id.

C. RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT AND THE MANDAMUS ACT

Judicial review under the APA, 5 U.S.C. § 701, et seq., is specifically precluded where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action, as defined under the APA, also includes "a failure to act." 5 U.S.C. § 551(13). Under 5 U.S.C. § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed." The elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of prejudice to one of the parties. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004); Rockbridge v. Lincoln, 449 F.2d 567, 569-73 (9th Cir. 1971).

The APA does not provide an independent jurisdictional basis. Califano v. Sanders, 430 U.S. 99, 107 (1977); Staacke v. U.S. Department of Labor, 841 F.2d 278, 282 (9th Cir. 1988). Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise established. Staacke, 841 F.2d at 282. Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range of remedies available in federal courts. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950).

Mandamus is an extraordinary remedy. See Cheney v. United States District Court

1  for the District of Columbia, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); Allied
2  Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). The United States Supreme Court
3  has stated that "[t]he common law writ of mandamus is intended to provide a remedy for a
4  plaintiff only if . . . the defendant owes him a clear nondiscretionary duty." Heckler v.
5  Ringer, 466 U.S. 602, 616 (1984). The Ninth Circuit has explained that

> [m]andamus . . . is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available.

Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003). Thus, "mandamus does not lie to review the discretionary acts of officials." See Nova Stylings Inc. v. Ladd, 695 F.2d 1179, 1180 (9th Cir. 1983) (internal quotations omitted).

**V. ANALYSIS**

A. DEFENDANT MUELLER SHOULD BE DISMISSED

This Court has recognized that since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. See 6 U.S.C. §§ 271(b)(5), 557; Liang v. Attorney General of U.S., 2007 WL 3225441 (N.D.Cal., Oct. 30, 2007). Accordingly, Defendant Mueller should be dismissed.

B. RELIEF IS NOT AVAILABLE UNDER THE APA[2]

1. Plaintiffs Seek To Compel Multiple Actions

The United States Supreme Court's decision in Southern Utah Wilderness Alliance mandates against granting relief. There, the Court determined that the APA's reference to "a failure to act" is limited to a discrete action that the agency is required to take. 542 U.S. at 64. Here, Plaintiffs ask the Court to compel multiple actions, including requiring the FBI to complete its investigation and issue results of the security check. See Complaint, p. 6, Prayer for Relief. USCIS has exercised its discretion to determine which cases merit being moved to the head of the name check line for expedited processing. See Exh. B. Plaintiffs

---

[2] Defendants recognize that this Court has rejected this argument, Yu v. Chertoff, 2007 WL 1742850 (N.D.Cal.); Clayton v. Chertoff, 2007 WL 2904049 (N.D.Cal.), but absent direction from the Ninth Circuit Court of Appeals, wish to preserve the argument for appeal.

Opposition to Plaintiffs' Motion for Summary Judgment
C07-5440 CW                                5

can point to no law requiring USCIS to request that the FBI expedite Plaintiff Kirakosian's name check, or setting a time frame upon the FBI's exercise of discretion in conducting the investigation. Furthermore, it is possible that upon receiving the results of the name check, USCIS will need to conduct further investigation. Accordingly, Plaintiffs' request for relief necessarily would impact multiple actions. As such, relief is not available under the APA.

  2.  Compelling Action By USCIS Would Necessarily Interfere With the FBI's Discretion

Numerous courts have recognized the FBI's discretion "in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks." Yan v. Mueller, No. H-07-0313, 2007 WL 1521732, at *6 (S.D. Tex. May 24, 2007) ; see also Takkallapalli v. Chertoff, 487 F. Supp. 2d 1094, 1099 (W.D. Mo. 2007) (stating that where delay was due to incomplete name check, "Defendants' conduct [was] sufficient to avoid judicial intervention."); Li v. Chertoff, 482 F. Supp. 2d 1172, 1179 (S.D. Cal. 2007) (recognizing that USCIS has wide discretion "in matters pertaining to the pace of the adjudication of I-485 applications."); Sozanski v. Chertoff, et al., No. 06-CV-0993 N, 2006 WL 4516968, at *1 (N.D. Tex. Dec. 11, 2006) (holding that federal district courts lack jurisdiction to compel the FBI to perform name checks in adjustment of status cases). Compelling USCIS to process Plaintiff Kirakosian's application in a certain time frame would amount to compelling the FBI to exercise its discretion in a certain manner. Accordingly, Plaintiffs essentially seek to compel a discretionary action, and relief is unavailable under the APA

  3.  The Delay is Reasonable

Even if the actions at issue were not discretionary, Plaintiffs have failed to establish that a delay constitutes unreasonable delay. In analyzing the reasonableness of the USCIS's delay, some courts have considered the factors articulated in Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 80 (D.C.Cir.1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for the rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.
(citations and internal quotation marks omitted).

      a.    <u>A Rule of Reason Governs the Agency Decisions at Issue</u>

Given the large volume of petitions and applications requiring adjudication, the extensive background check that is required for national security and public safety, and the limited resources available to it, the FBI is proceeding in an orderly fashion with the completion of name checks in the order in which they are received. See <u>Eldeeb v. Chertoff</u>, No. 07cv236-T-17EAJ, 2007 WL 2209231, at *2 (M.D. Fla. July 30, 2007). Once the FBI name check in this case has been completed, USCIS will promptly adjudicate Plaintiffs' applications. Rohrs Decl., ¶ 6. Public safety requires USCIS to make certain that the background checks have been completed and any outstanding issues resolved before it reaches a decision.

In Plaintiffs' case, this means that USCIS must await the results of the FBI name check before reaching a decision on the I-485 application, and the FBI must be given time to perform an accurate and thorough check. Rohrs Decl., ¶ 11. The FBI's "first in, first out" processing approach is a method that is "deserving of deference." <u>Liberty Fund, Inc. v. Chao</u>, 394 F. Supp. 2d 105, 118 (D.D.C. 2005); see also <u>In re Barr Lab. Inc.</u>, 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique and authoritative position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.").

      b.    <u>There Is No Congressionally Mandated Timetable</u>

The second <u>TRAC</u> factor does not apply to the present case because there is neither a statutory requirement that the FBI process the name check nor one requiring USCIS to adjudicate the application within a certain amount of time. <u>Contra</u> Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel security checks to be completed within a certain time frame). Additionally, Congress has not provided any clear guidelines indicating the speed at

Opposition to Plaintiffs' Motion for Summary Judgment
C07-5440 CW                        7

which the FBI and USCIS should conduct its adjudications. Congress has, however, required that USCIS conduct certain criminal and national security background checks to ensure eligibility for adjustment of status. See 8 U.S.C. §§ 1105(b)(1), 1255(a).

Defendants acknowledge that Congress has observed that in most instances, applications for immigration benefits should not take more than 180 days to adjudicate. 8 U.S.C. § 1571. However, the statute expresses a "sense of Congress," and is not a mandate. Id. The language in § 1571 is merely precatory, and does not impose a deadline on Defendants. See Wright v. City of Roanoke Redevelopment and Housing, 479 U.S. 418, 432 (1987) (statute phrased in precatory terms does not create a substantive right); Orkin v. Taylor, 487 F.3d 734, 739 (9th Cir. 2007) ("'Sense of Congress' provisions are precatory provisions, which do not in themselves create individual rights, or, for that matter, any enforceable law.").

Furthermore, the statute was enacted in 2000, prior to the events of September 11, 2001. See Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 (enacted Oct. 17, 2000). Accordingly, it no longer provides a meaningful standard against which the Court can measure the delay at issue in this case.

Where there are no statutory guidelines, and in order to establish a "rule of reason," this Court must consider the factors that contribute to the backlogs that both the FBI and USCIS face. See, e.g., INS v. Miranda, 459 U.S. 14, 18 (1982) ("Both the number of the applications received by the INS and the need to investigate their validity may make it difficult for the agency to process an application as promptly as may be desirable"). In making a request for immigration benefits, "aliens only have those statutory rights granted by Congress," Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996), and no federal statute or regulation prescribes a hard-and-fast deadline for acting upon immigration applications, such as the ones in this case, submitted to the USCIS. See Cordoba v. McElroy, 78 F. Supp. 2d 240, 244 (S.D.N.Y. 2000).

As discussed in Eldeeb, the FBI name check is a complex process. Eldeeb, 2007 WL 2209231, at *2. It involves a check of a variety of sources, and although most name checks are resolved in a matter of hours, approximately 32 percent require additional, manual

Opposition to Plaintiffs' Motion for Summary Judgment
C07-5440 CW                                    8

1 review. Eldeeb, 2007 WL 2209231, at *2. Of those remaining checks, 22 percent are
2 returned within two months. Id. The FBI processes name checks chronologically, based on
3 the date the name check is submitted. Id.

        c.    The Impact of the Delay is Minimal in Comparison with the National Interest in Complete and Thorough Background Checks

5     The third TRAC factor is the delay's impact on human health, welfare, and economic
6 harm to Plaintiffs. This factor's analysis overlaps with the analysis of the fifth TRAC factor,
7 the nature and extent of the interests prejudiced by the delay. TRAC, 750 F.2d at 80; Liberty
8 Fund, 394 F. Supp. 2d at 118. Plaintiffs may be inconvenienced by the delay in adjudication,
9 but this individual interest cannot outweigh Defendants' interests in fully and accurately
10 completing each name check. Security background checks for individuals seeking
11 immigration benefits is a key component to our nation's national security. See The 9/11
12 Commission Report, 2004 WL 1634382 at 352 (July 22, 2004) (finding that, "had the
13 immigration system set a higher bar for determining whether individuals are who or what
14 they claim to be....it could have potentially have excluded, removed, or come into further
15 contact with several hijackers who did not appear to meet the terms for admitting short-term
16 visitors.").

17     In most cases, the adverse impact caused by the delay is not substantial. Applicants for
18 adjustment of status who have pending applications may apply for and obtain employment
19 authorization for the entire time the application is pending. Additionally, most applicants
20 may also apply for and receive advance parole to enable them to travel abroad during the
21 pendency of their application. Rohrs Decl. ¶ 24. Thus, when balancing the agencies'
22 interests in defending against threats to national security against the Plaintiffs' interest in
23 adjudication, the interests of the nation must prevail.

        d.    The Effect of Expedition Would Intrude on Agency Discretion and Prejudice Other "First In Line" Applicants

26     The court in Sze v. INS, No. C 97-0569 SC, 1997 WL 446236, at *8 (N.D. Cal.
27 Jul. 24, 1997), which applied the TRAC test to a similar complained-of delay in the
28 immigration context, found the fourth factor to be the most persuasive. Id. at *8. The court,

Opposition to Plaintiffs' Motion for Summary Judgment
C07-5440 CW        9

in refusing to grant relief under the APA, held that "the reasonableness of administrative delays must be judged in light of the resources available to the agency." Id. The court also recognized that by granting relief, it "would, at best, reorder the queue of applications, thereby leading to little net benefit." Id.; see also Liberty Fund, 394 F. Supp. 2d at 117 (deferring to agency's decision on how to handle competing applications for permanent labor certifications).

Just as in Liberty Fund, Plaintiffs' argument of unreasonable delay in this case must also fail. Plaintiffs ask this Court to find that USCIS has not adjudicated the I-485 applications in a reasonable period of time. Plaintiffs' legal arguments under Sections 555(b) and 706(1) of the APA fail because adjudication has not been unreasonably delayed. Contrary to Plaintiffs' pleadings, the existence of administrative delays does not mean that such delays are unreasonable. Courts have noted that "the reasonableness of such delays must be judged in light of the resources that Congress has supplied to the agency for the exercise of its functions, as well as the impact of the delays on the applicants' interests." Fraga v. Smith, 607 F. Supp. 517, 521 (D. Or. 1985) (citing Wright v. Califano, 587 F.2d 345, 353 (7th Cir. 1978)). Indeed, "[t]he passage of time alone is rarely enough to justify a court's intervention in the administrative process." Fraga, 607 F. Supp. at 521.

Similarly, the effect of expediting delayed agency action under the fourth TRAC factor would unquestionably impinge upon agency activities and responsibilities of a higher priority. Such an order would intrude on the agency's discretion and ability to fulfill its highest priority of safeguarding the nation. See Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1027 (7th Cir. 2002) ("the government's interest in preventing terrorism is not only important but paramount"); see also Walters v. Reno, 145 F.3d 1032, 1043 (9th Cir. 1998) ("The Government's interests in the administration of its immigration laws and in preventing [immigration related] document fraud are likewise considerable.")

Delays in the processing of FBI name checks arise for a variety of reasons. First, USCIS is not the only agency that engages in the FBI name check program. Notably, the FBI and USCIS processes' do not occur in vacuums. Any requirement that the FBI or USCIS process

Opposition to Plaintiffs' Motion for Summary Judgment
C07-5440 CW                                     10

Plaintiff Kirakosian's name check or application within a particular time limit will have the unfortunate side effect of slowing the processing for other applicants who are also awaiting action on their applications for immigration benefits.

The requests generally processed out-of-order are cases expedited by USCIS for specific health, welfare, or economic reasons.  See Exh. B.  Absent these compelling reasons, moving some individuals to the front of the queue would simply move that group ahead of others who also had been waiting, resulting in no net gain in processing.  See In re Barr Lab., 930 F.2d at 75; Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1101 (D.C. Cir. 2003).  Furthermore, ordering Plaintiffs' case to the front of the line sets the precedent that the more litigious applicants are most likely to move to the top of the pile at the expense of other applicants that have waited even longer, but may not have the resources to file suit.  Manzoor v. Chertoff, 472 F. Supp 2d 801, 809 (E.D. Va. 2007); see also Yan, 2007 WL 1521732 at *7 (holding that a grant of review of petitioner's claims would only, "encourage other applicants to file suit to receive expedited treatment rather than wait their turn in line.").

Moreover, the courts have been cautioned against "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 525 (1978).  Here, where "there are no allegations of bad faith, a dilatory attitude, or a lack of evenhandedness on the part of the agency, the reasonableness of the delays in terms of the legislatively imposed 'reasonable dispatch' duty must be judged in light of the resources that Congress has supplied, as well as the impact of the delays on the applicants' interests." Wright, 587 F.2d at 353.  The complexity of agency investigations, as well as the extent that the individual applicants contributed to delays, also enter into a court's deliberations.  See Saleh v. Ridge, 367 F. Supp. 2d 508, 512 (S.D.N.Y. 2005).

    e.  The Agencies are Exercising Every Effort to Address the Delay

The sixth and last TRAC factor provides that a court need not find impropriety to hold that an agency action is unreasonably delayed.  Conversely, "the good faith of the agency in

Opposition to Plaintiffs' Motion for Summary Judgment
C07-5440 CW  11

addressing the delay weighs against mandamus." Liberty Fund, 394 F. Supp. 2d at 120. Here, the delay is due to the pendency of Plaintiff Kirakosian's FBI name check. See Rohrs Decl. ¶ 6. As discussed above, the FBI is processing the name checks to the best of its ability, and USCIS is monitoring the case to ensure that once the name check is complete, USCIS can complete adjudication. Thus, balancing the TRAC factors demonstrates the reasonableness of the Government's actions.

In addition, Plaintiffs have failed to show that USCIS will refuse to adjudicate their applications once the FBI completes the requisite name check. See Saleh, 367 F. Supp. 2d at 513; see also Eldeeb, 2007 WL 209231, at *17 (finding that the plaintiff had failed to show that USCIS was refusing to act on his application). On the contrary, the FBI and USCIS are taking active steps towards completing the background checks for adjudication of their applications. Specifically, USCIS is making every effort to complete adjudication as soon as the name check is completed. Rohrs Decl., ¶ 12.

Many courts have refused to grant relief under the APA, even when naturalization or other immigration applications were pending for significant time periods. See Saleh, 367 F. Supp. 2d at 513 (finding five-year delay not in violation of APA in part in light of volume of applications); Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (over three-year delay not unreasonable because of government's limited resources and substantial caseload); Alkenani v. Barrows, 356 F. Supp. 2d 652, 656-57 (N.D. Tex. 2005) (no unreasonable delay found in naturalization context because of need to wait for completion of FBI investigation). Just as in these cases, Plaintiffs in the present case insist that this Court find an unreasonable delay based solely on the amount of time passed since receipt of their applications. However, the law requires a more in-depth analysis for mandamus relief under the APA. A review of the six TRAC factors shows that Defendants have not unreasonably delayed actions pertaining to Plaintiffs' applications.

C. MANDAMUS IS NOT AVAILABLE BECAUSE PLAINTIFF'S CLAIM IS NOT CLEAR AND CERTAIN

Mandamus is reserved for those situations in which the plaintiff's claim is clear and certain. Kildare, 325 F.3d at 1078. Here, because Plaintiffs have failed to establish that

Opposition to Plaintiffs' Motion for Summary Judgment
C07-5440 CW                                    12

action on their applications have been unreasonably delayed, they have failed to show that their claim is so clear and certain that mandamus is justified.  Furthermore, USCIS has exercised its discretion in determining which name checks should be expedited.  See Exh. B. Plaintiffs' case meets none of these criteria.

### VI.  CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to deny Plaintiffs' motion for summary judgment, dismiss Defendant Robert S. Mueller, and grant remaining Defendants' motion for summary judgment as a matter of law.

Dated: February 7, 2008　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　JOSEPH P. RUSSONIELLO
　　　　　　　　　　　　　　　　　　　　　　United States Attorney


　　　　　　　　　　　　　　　　　　　　　　          /s/
　　　　　　　　　　　　　　　　　　　　　　ILA C. DEISS
　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendants